Filed 4/23/14  P. v. McCliman CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# COPY

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C073225 |
| Plaintiff and Respondent, | (Super. Ct. No. SF118124A) |
| v. | |
| MARCUS MCCLIMAN, | |
| Defendant and Appellant. | |

Defendant Marcus McCliman stabbed John Joseph Lewis (JJ) (because John Joseph Lewis was referred to as JJ throughout the trial, and because another witness bears the last name of Lewis, to avoid possible confusion we refer to the former as JJ in this opinion) several times in the upper body during a street fight between the two outside a bar in Stockton.  JJ withdrew from the fight and was helped by friends into a car.  As JJ lay helpless in the car, defendant, who still held the knife but claimed he did not use it to

1

further stab JJ, ran to the car, leaned in through the window and struck JJ several times before the car could drive off.  JJ died from a stab wound to the heart.

Defendant and codefendants Dorjan Daniels and Djuane Nunley were each charged with murder (Pen. Code, § 187, subd. (a); unless otherwise stated, statutory references that follow are to the Penal Code), attempted murder (§§ 187, subd. (a), 664), and street terrorism (§ 186.22, subd. (a)).  Defendant was additionally charged with personal use of a knife in the killing.  (§ 12022, subd. (b)(1).)  A jury acquitted defendant and the codefendants of murder and attempted murder, but convicted only defendant of voluntary manslaughter.  (§ 192, subd. (a).)  The jury also found the knife use allegation true.  Defendant was sentenced to state prison for 12 years, consisting of the upper term of 11 years for the voluntary manslaughter plus one year for the weapon use.

On appeal, defendant contends the trial court prejudicially erred when it based its finding of aggravation on its belief that defendant inflicted the fatal stab wound while JJ lay defenseless in the car rather than inflicting it during the street fight.  Defendant further argues that if we conclude the error was forfeited because of defense counsel's failure to call the error to the court's attention at sentencing, then defendant received ineffective assistance of counsel.  We conclude that in the circumstances of this case, it is immaterial whether defendant inflicted the fatal wound while JJ was in the car or during the fight on the street.

FACTS

A.    *Prosecution's Evidence*

On August 5, 2011, JJ was at Chivita's Salsa and Sports Bar & Grill (Chivitas) in Stockton with several friends, including Ashley Jones, Candra Taylor, Armahd Lewis, and Aaron Phillips.  Defendant and codefendants Nunley and Daniels were also in the bar and were throwing gang signs.  When the bar closed, gunfire unrelated to any activity by the parties or witnesses in the present appeal was heard from down the street, causing the bar patrons to hurry to leave the area.

2

After leaving Chivitas, Lewis saw defendant, Nunley, and Daniels walking in the street and heard them calling out gang language. Defendant, with clenched fists, approached JJ and asked him where he was from. JJ responded, "I don't have nothing to do with that." Defendant took a fighting stance and Nunley and Daniels, standing with him, began moving to the side of JJ as if they were "surrounding" him. Several members from JJ's group came to aid JJ, and the two groups started fighting, with defendant fighting JJ. Eventually, the two groups disengaged and began walking away from each other. Lewis found JJ leaning against a mailbox with a large cut on the back of his arm.

Jones and Taylor, who had seen the fighting, drove to the mailbox upon which JJ was leaning and trying to catch his breath. Taylor, who was in the passenger seat, moved over as far as she could in the front passenger seat as she and two of JJ's friends tried to get him into Jones' car. According to Taylor, JJ was motionless, struggling for breath, and bleeding from his lower abdomen and a very deep cut on his arm. Before Jones could drive off, defendant ran to the car, leaned in the window and began punching JJ in the upper body. Taylor attempted to protect JJ, who could not fight back, by placing her hands over his head and chest. Taylor did not see any weapons in defendant's hands during the assault. After Jones drove to her house and paramedics and the police were called, Taylor discovered that she was bleeding from a cut across her palm. Taylor did not know when or how she got the cut.

Dr. Bennet Omalu, who conducted the autopsy on JJ, found three knife wounds to JJ's chest--one to the left side and one to the right, each of which was superficial and would not be fatal, and one which penetrated JJ's heart and left lung, which caused JJ to bleed to death. JJ also had a deep slash wound on the back of his right arm and small cuts on his arm, right shoulder, right abdomen, and right thumb. Dr. Omalu opined that even after the fatal wound was inflicted, JJ would have been able to function for about three to 10 minutes, during which time he would exhibit difficulty in breathing and his physical functioning would be steadily declining.

3

*B.      Defense Evidence*

Defendant testified that while he, Nunley and Daniels were at Chivitas, they spoke with two of JJ's female friends. When Chivitas closed, defendant and Daniels followed Nunley who was walking with the females. Defendant retrieved a folding knife from a planter where he had earlier hidden it when he saw that Chivitas had a metal detector at the door. As defendant was speaking with two other men who were leaving the club, he saw Daniels and Nunley being attacked by several males.

Defendant ran to aid his companions, striking the largest of the assailants, who was JJ. After fighting for some time, JJ and one of his friends, Phillips, knocked defendant to the ground. Defendant got to his knees, but JJ, Phillips, and another assailant, began punching and kicking defendant. Phillips and the other assailant ran off, but JJ continued beating defendant. Defendant pulled his knife, flipped it open and swung it toward JJ, causing JJ to backup. Defendant then stood up, but JJ continued the assault. Defendant responded by stabbing JJ two or three times in the area of his chest and once in the back of his arm. JJ "stumbled back . . . sort of went to a knee and started hovering over like holding himself." Seeing that JJ was obviously hurt and no longer a threat, defendant left him alone and closed the knife's blade but kept the knife in his hand.

However, Phillips returned and the two fought for a bit more and then agreed to discontinue the fight. Phillips went to where JJ was leaning against a mailbox and, joined by others, ran toward Jones's car. Defendant heard JJ yell, "Shoot those motherfuckers." Having heard gunshots previously, defendant became fearful that someone in the group may have had access to a gun. Since defendant had no place to run for cover, he opened the knife but held the blade down so he would not cut himself, and ran to Jones's car where he commenced punching JJ. JJ was hitting back but "it wasn't much." Defendant continued to hit JJ because he was fearful JJ might be able to reach a gun. Jones finally drove away and defendant and his companions left the area.

4

*C.    The Trial Court's Ruling*

In explaining why it was imposing the upper term the court stated:  "It is the attack at the car that predominates with the Court.  Does it disclose a high degree of viciousness, callousness, and cruelty?  Defendant--I reviewed again the defendant's testimony through my notes.  He himself testified that the victim had been disabled at the first encounter.  Disabled and bleeding.  Yet he pursued him, and pursued the victim and delivered blows to vital areas of his person, to the heart.  I think the defendant exhibited a clear, strong-- there is overwhelming evidence there was an intent to kill.  And he delivered the blows knowing that the victim had been disabled.  It disclosed a high degree of cruelty, viciousness and callousness under the circumstances."

DISCUSSION

California Rules of Court, rule 4.421, sets forth aggravating factors to be considered by the court in making its sentencing determination.  Rule 4.421 provides: "(a) . . . [¶]  Factors relating to the crime, whether or not charged or chargeable as enhancements include that:  [¶]  (1) The crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness."

Referring to the above quotation by the trial court, defendant argues that, "[t]hese remarks show that the trial court based its decision to impose the upper term upon the finding that the final, fatal blows were inflicted when [JJ] was in the car" whereas "the evidence showed that [defendant] inflicted the fatal wounds during his initial confrontation with [JJ] as they fought in [the] street . . . ."  Defendant then concludes that "[b]ecause this erroneous view was the basis for imposing the upper term, that sentence constituted an abuse of discretion" and "[t]he case should either be remanded for resentencing or this Court should reduce the sentence to the middle term."  We reject the contention.

Defendant misunderstands the trial court's ruling. The court never made any finding whether defendant inflicted the fatal stab wound during the street fight with JJ or when he was assaulting JJ in the car. Instead, it was the "attack at the car that predominate[d]" in the court's mind. And this was because there was no reason for defendant to again assault JJ since defendant, by his own testimony, recognized that after he had stabbed JJ during the street fight, JJ was severely disabled and bleeding. Yet so knowing, defendant initiated a second, and wholly unnecessary, assault on JJ, during which he struck JJ with blows to vital areas of JJ's body, including his heart. We recognize that defendant claimed he was afraid JJ might be able to reach a gun in the car, but it appears the trial court discounted that testimony or thought, even if that was the case, it did not justify defendant's second attack on JJ who Taylor described at the time as motionless, struggling for breath and bleeding from his lower abdomen from a very deep cut on his arm.

Even if defendant had stabbed JJ during the street fight, defendant's position is not improved because the second assault is then upon not only an essentially helpless man, but on one who is dying.

Accordingly, substantial evidence supports the court's imposition of the upper term.

DISPOSITION

The judgment is affirmed.

        HULL        , Acting P. J.

We concur:

       ROBIE        , J.

       HOCH        , J.